and the consolidated case, 7073 Gould v. United States. Mr. Horan. Mr. Chief Justice, and may it please the Court, the statutory interpretation question here is what laws trigger Section 924C1A's accept laws. Mr. Gould offers an interpretation that gives meaning and effect to every word and phrase of Section 924C1A and that follows this Court's recent holdings regarding the broad scope of the phrase, any other provision of law. The government, on the other hand, advocates a narrow construction that is not supported by the text and defends it primarily on the basis that Section 924C supposedly should always produce the most severe mandatory minimum sentence for every defendant. Respectfully, the government's interpretation is incorrect. Its reading gives no practical effect to the phrase, any other provision of law, and the government has not cited and has yet to even attempt to distinguish this Court's recent interpretation of the very same phrase, any other provision of law, in Republic of Iraq v. Beatty just last year. Unlike the government's, Mr. Gould's interpretation is true to the text, is true to this Court's holdings, and is true to Congress's evident purpose in 924C1A and in particular in its accept clause. Alito, if the text of this is so clear, how is it that Mr. Gould and Mr. Abbott propose different interpretations of this provision? Your Honor, as an initial matter, I would note that I think our interpretations are not that far apart, but. They're not the same, are they? They're not. And our interpretation, we believe, is the closest to the actual text. Our interpretation requires reading no language into the text. Isn't there – isn't there is a missing prepositional phrase in this – in the provision that we're looking at. It says, except to the extent that a greater minimum sentence is otherwise provided for what, and all of you have to – are filling in the prepositional phrase for an offense of conviction, for an offense that's part of the underlying transaction, for a violation of this particular provision, or one that's very similar to it. There's just no way of getting around the fact that something has to be read in there, something is implied. Isn't that right? Your Honor, respectfully, I believe under our interpretation, there is – you do have to understand something to be in there, but we are not actually reading anything into the text. That is the reason, to be sure, the words, any kind of conviction are not in there. However, the most natural reading of the text, without adding anything to it, is that 924c1a requires a 5-year, at least a 5-year minimum sentence, in addition to any sentence for the predicate drug trafficking or violent crime, except to the extent that a greater minimum sentence is provided for the defendant by subsection 924c or by any other provision of law. Ginsburg. So that means there would be no punishment, added punishment at all, for the possession of the gun. That is, you have the possession with intent to distribute, no gun involved, and you get 10 years' mandatory minimum for that. That automatically would wipe out any add-on for the gun under your reading. Yes, and yes, Justice Ginsburg, and to follow on that, it is true that our interpretation, we think, that the plain text dictates that if the except clause is triggered, the lesser mandatory minimum sentence under 924c1a shall not be imposed. That is the case. Sotomayor, you keep saying that you are not reading anything into the statute under your interpretation, but you are. You are limiting the any other provision of law to any other provision of law specified in the charging in the counts of conviction, correct? That is, yes, Your Honor. We are recognizing that limitation. So you said to Justice Alito that you weren't reading anything in, but you are. You are reading into it that the other provision of law to refer to counts of conviction at sentencing, correct? That is correct, Your Honor. All right. So why is that read-in logical, meaning it's giving no extra punishment for the possession of the firearm, which was, I think, Justice Ginsburg's? Yes, I think you weren't finished answering my question. If I may, and I think it will help in answering your question, Justice Sotomayor. That is correct. The only thing I would say, the thing I would additionally say, though, is that there is, under the sentencing guidelines, which must be applied even now as to provide a recommended range, there would, in each of these instances, be a firearm enhancement that enhances the underlying predicate offense's sentence that the defendant would be facing and often the district court would work. So I believe that's the case. But that's not mandatory. That is no longer mandatory. That is correct. And with regard to your question. Ginsburg. So you're saying that the gun possession can be accounted for by the judge as a matter of discretion using the guidelines, but there's no mandatory add-on? Yes, Your Honor. That is correct. There would no longer be a mandatory sentence for or mandatory additional punishment for the firearm possession. And I suppose the prosecution can alter the consequence based on what it chooses to bring in a single prosecution. I mean, if it has other enhancements, it should bring a separate prosecution for that. So long as it brings it in one suit, you say, in one prosecution, you get the break. But if the other enhancement is brought, has been brought in a separate prosecution, you don't get it. Justice Scalia, I think that's correct to an extent. The main exception to that, and I think it's a significant one, is that the except clause will most often be triggered in the minor run of cases by the predicate drug trafficking or violent crime that carries with it a greater mandatory minimum sentence. That is, for double jeopardy purposes, the same offense as 924C. So, in fact, there is a significant constraint on the prosecution that it cannot bring a separate prosecution for 924C and its predicate drug trafficking or violent crime. So there's a significant limitation on the concern. Yes, yes, I understand what you're saying. Okay. And, Justice Sotomayor, to return to your question, if I could answer it in two parts. First, and I didn't mean to overstate, if I did, we're not reading additional language into it. Our reading is contained within the context and the actual text that is confined to section 924C. Explain how, because you just said to Justice Scalia that if the mandatory minimum is in a separate charging instrument, then it doesn't affect you at all. It only affects you if the count is in a count of conviction at sentencing. Yes, Your Honor, that's correct. So what in the language of 924C sets forth that limitation? Your Honor, I would say that it is the words that are in the indictment and not in the indictment, but it is the text that is otherwise provided and the context in which any textual reading always must be provided. But otherwise provided by law could be Federal, State laws, it could be in the indictment, not in the indictment. You're proposing that we limit this somehow, but I want to see what the language is that you're relying upon to limit it. Your Honor, it is – first of all, the statute begins by directing the defendant – I mean, directing the district court to any person. So they're focusing on the defendant. That is the offense-defining provision, to be sure, of the sentence. But throughout the text, it also directs the district court to take account of minimum sentences that are provided for other crimes. For instance, primarily the predicate. Sotomayor, in relationship to what? Isn't that the government's argument, which is that you have to say in relationship to something, whether it's the indictment or, as the government would have it, in relationship to the possession or carrying of a firearm? Why isn't that the more natural reading? Your Honor, because that – because the statute as a whole is essentially instructs the district court on how to sentence a defendant, if at all, for the 924 C1A offense. It directs them to, after considering that it's the person in front of them, to impose a sentence of 5 years or less in addition to the predicate – any penalty for the predicate of drug trafficking or violent crime, except to the extent that a greater minimum sentence is otherwise provided. The natural reading of that is – must be that is a greater minimum sentence is provided for that defendant that is before the particular district court with the particular offenses that he has before him at sentencing. Don't most crimes of violence and drug trafficking carry more than a 5-year sentence? Many of them do, Your Honor. In fact, those that carry a mandatory minimum sentence largely carry – all carry, in fact, 10 years. There are some – there are some both predicate drug trafficking offenses and predicate violent crimes that carry either no minimum at all or a mandatory minimum of 5 years or less, and so would not trigger the except clause. Scalia, let's suppose somebody commits a rape and a maiming in the same – in the same criminal act. You're saying that the prosecution – and let's assume it's his third, it's his second, the enhancement as being a, you know, a three-time violent crime loser. You're saying he can get that enhancement and the enhancement under this gun. He had a gun at the same time. He can get it if the prosecution charges rape in one prosecution for which he'll get the three-time loser enhancement, and then in a separate prosecution, it charges maiming and the use of a firearm. Then he gets both enhancements, right? That's correct, Your Honor. Breyer, I'm not sure if that's right. I think that this may well apply to the crime that is being prosecuted where the crime is defined as a real offense in the world with limitations put on that term by the guidelines. I would think that would be a natural reading, in which case you'd look to the conduct of the person. And if the conduct of the person is such that it calls for a mandatory minimum of a certain kind, there we are. And if that exceeds this amount, there we are. You can't apply it. And if it doesn't, you do apply it. If you looked into that, I mean, that was my reading of it as in the most natural way. The word crime is ambiguous. Sometimes it means words in a statute. Sometimes it means an affair in the world. And I thought this one probably meant the affair in the world. And to answer your question, Justice Breyer, in answering Justice Scalia's question, my assumption was that there were in fact mandatory minimums such that this would play out with one being greater than the other. Well, he's disagreeing with you. He he'd, your theory, you're not reading it, crime, to mean an affair in the world. You're reading it to mean a particular prosecution for a particular violation of a statute, right? No, that's correct. Yes. You read it that way. You must read it as an affair in the world, whatever that means. If that's so, then this gives tremendous power to the prosecutor to decide what the sentence will be in terms of how he manipulates the charge. And I thought that probably this read with the guidelines is designed not to permit that. It's to minimize the discretion, not to maximize. Your Honor, there will be circumstances in which the prosecutor and the government based on how it makes its charging decisions can affect the floor that's created by the minimum sentence. This is a different situation than Deal, which is actually determinate sentences. It's not actually a circumstance where the government can determine the punishment itself. That would still be to the district court. But we maintain this is the most natural reading. And, in fact, for instance, when this concern came up in Deal, that was to confirm the most natural reading of the plain text. The government would actually turn that analysis on its head under these circumstances. Sotomayor's reading of it what your co-counsel is advocating, what Mr. Abbott is arguing? No, Your Honor. I mean, I don't know if it makes any difference. I mean, has there ever been such a case where the prosecutor worked this in such a way that he would produce this? Are you aware of any such case ever happened? No, I'm not aware of that, Your Honor, in part because the except clauses, there aren't that many instances of the except clauses having been actually applied. And there's never been the incentive to do so until we accept your interpretation. Then there will be the incentive to do so. There may be, Justice Scalia, there may be some incentive to do so subject to other most offenses that come under the same transaction in the same indictment. There will be counter-incentives, to be sure. Your Honors, in addition to the fact that our interpretation does not involve, we think, adding anything into the text that others must, we think it establishes and advances an evident purpose that Congress had in this, which was to ensure that a defendant who is convicted under 924C1A receives some sufficient minimum punishment after 1998, the 1998 amendments, section 924C1A was trafficking in essence in minimum sentences, and that's what this is about. So this way, a defendant will receive a sufficient minimum sentence by way of 924C. I see that my time is up. Mr. Abbott will be represented by Mr. O'Brien at this time. Thank you, counsel. Thank you. Mr. Ryan. Mr. Chief Justice, and may it please the Court. I'd like to spend some time on the second question in our petition regarding whether other firearms offenses are included within the scope of the EXCEPT clause. But before I do, I'd like to make a couple of points about the first question, which is common to our case and to Mr. Gould's. Justice Sotomayor asked, why isn't the government's reading the most natural? And the answer is pretty simple. The government's reading leaves one-half of the effect clause with absolutely no practical effect. The government has, in its current interpretation, suggested that the EXCEPT clause applies to one provision of law outside of 924C, that's 3559C, and yet with respect to that provision, the EXCEPT clause does absolutely no work, both for practical reasons and because of the way 3559C is written. Sotomayor, 930C, a person who kills any person in the course of bringing a firearm into a Federal facility shall be punished as provided in sections setting forth minimums for murder and manslaughter. So it would also have an effect in 930C, no? It's not clear from the government's argument, Justice Sotomayor. I wasn't sure why it didn't list 930C, but. As I understand the government's argument, the sentence that the only sentence that would count outside of 924C would be a sentence specifically for the 924C1A effect. Sotomayor, but its brief does two formulations. It says, everything that affects 924C, and then in other places in its brief, it says the EXCEPT clause refers to any higher minimum sentence for possessing, using or carrying a firearm in relationship to a drug or a drug offense or a crime of violence. Those are two different formulations. That's exactly right, Justice Sotomayor. And it's the. I'm focusing on the second formulation. Okay. That point actually demonstrates why the government's justification for this limitation doesn't hold up. As the government argues at one point, the reason to read any other provision of law to include only sentences for 924C1A crimes is because the EXCEPT clause, when it refers to this subsection, refers only to sentences for section 924C1A offenses. Yet that is not the case. As this Court indicated in O'Brien, 924C1B is a separate offense. Well, if 924C1B can trigger the EXCEPT clause and it's not the same offense as 924C1A, the government's argument about excluding other offenses that might be separate from 924C1A no longer holds up. The other difficulty with the government's reading, to go back to the practical point, is that if you apply it just to 3559C, it can have no effect because as a practical matter, no one can serve a term of years after successfully completing a life sentence, which is what's required under 3559C. And 3559C itself has a provision, the notwithstanding provision, that makes clear that only the life sentence should be imposed when 924C is the third strike for purposes of 3559C. That, in turn, just leaves future applications, and there the government's argument under which the language that currently has no effect might have some effect is nothing short of far-fetched. It would require Congress to amend the sentence of 924C1A outside of 924C1A and not indicate how those two penalties should interact. Now, if I could turn to the questions about the transactional limitation which we suggest. The point of suggesting that the accept clause should be limited to sentences for the same transaction is suggested by some of the questions directed to Mr. Gould's counsel. We think that it's the more natural reading of the statute in part because of concerns recognized by this Court in United States v. Diehl, namely that the statute is not designed and should not be read to give prosecutors unreviewable discretion as to when the minimum sentence in 924C ought to be applied or not. It also would preclude the equally odd situation of a defendant being able to benefit from the accept clause in a multi-count indictment when the defendant has, faces a higher mandatory minimum sentence for a completely unrelated charge. Alito, where would we look to find the definition of a criminal transaction for these purposes? You could look into 924C itself. Our view is that it would be no different than the transaction that would give rise to the 924C charge itself. And so for that reason, it would necessarily include the predicate offense or another firearms offense. What if there were several 924C offenses committed during a rather brief period of time? What if on the same afternoon an individual engaged in a number of drug trafficking offenses and during each of those used or carried a firearm? Would they be part of the same criminal transaction? No. Just as different transactions can lead to multiple 924C charges, which is what happened in Diehl, that could also occur here. Alito, when you say different transactions, but I'm looking for the definition of a criminal transaction, the criminal law has labored with this for a long time. It's not a self-defining concept. Is it a criminal transaction? No, it's not, but, Your Honor, but I don't see how it would be any more difficult to determine the transaction than to look at what would constitute the 924C offense. It would be the same set of operative facts that could lead to a 924C charge, which would count as the transaction. Ginsburg. Mr. Ryan, I thought that you had three positions, and now you're talking about the second one, which is any greater minimum sentence arising from the same criminal episode, but I thought your first position was any greater minimum sentence applicable to the defendant at sentencing. That's Mr. Gould's position. Our position is limited to the same transaction. Our alternative position, which I'd like to turn to now. Well, the way it would have to work is that there would have to be a previous conviction. Now, if I could turn to the firearms argument. Our argument here is straightforward. Scalia. Excuse me. Before you go on, your last remark, it has to be a previous conviction. So why doesn't that leave it in the hands of the prosecutor whether to bring that conviction, that other case, prior or subsequent? I misspoke, Justice Scalia. You're exactly right. It would include uncharged. It would prohibit prosecutors from being able to use charging instruments to determine whether 924C would apply. I was thinking of a particular example, but in the general case, you're right, I apologize for that misstatement. Now, if I could just spend a little bit of time on our second question. Our argument here is fairly straightforward and fairly modest. And it relies on the fact that 924C is essentially a firearms offense. And the punishment provided in the different paragraphs in 924C are primarily about firearms. And so in looking to determine the meaning of any other provision of law, it's not It is quite natural, as both the First Circuit recognized and as the government recognized in Whitley, the Second Circuit case, to include provisions of law outside of 924C that punish firearms offenses. Now, to be sure, this particular limitation is not commanded by the plain language of the statute and rests, like the government's argument, on context and purpose. But the difference is that this argument still gives some effect to the EXCEPT clause. It would apply, as here, to other firearms offenses outside of 924C, like the Armed Career Criminal Act. Alito, it gives a broader effect to the EXCEPT clause, but the government's argument gives effect to the EXCEPT clause, doesn't it? 3515 9C, which was enacted at the same time as this EXCEPT clause, wasn't it? And makes explicit reference to 924C. Two points, Justice Alito. First, the government's reading has no practical effect. It leaves the EXCEPT clause with no practical effect. You could take the EXCEPT clause away and there would be no difference in terms of the sentence under 3559C. As for the enactment of 3559C, the government's argument is actually different. The government argues that when 3559C was amended to include possession, it was at that point that the EXCEPT clause also entered into 924C. The difficulty with that argument, as we explain in our brief, is that 3559C was already linked with 924C insofar as both addressed use. And because 3559C and 924C were already linked, and the notwithstanding provision within 3559C indicated that if the 924C offense is your third strike, you get the life sentence. That's it. Well, the fact that Congress then amended 3559C to make another connection with 924C can't possibly explain why there's a sudden need for the EXCEPT clause. But the question is an important one because it goes to the fact that the government has offered three different interpretations of the language in this case. The first, one of the first was in Whitley, where it suggested any other provision of law includes other firearms offenses outside of 924C, provided that they impose a consecutive sentence. That argument was rejected for the idea that instead 924C's EXCEPT clause actually applies to no existing provisions of law. And now the government argues that it applies to one, 3559C, and it's come up with a new theory as to why the EXCEPT clause exists in the first place. But that theory doesn't hold up, and the government's shifting interpretations, if nothing else, suggests that the government has not hit upon the most natural reading. Ginsburg, But you have offered three different readings, so one can't say that this statutory text has a clear meaning, which I think is your first argument, that it has a clear meaning, and yet we have Mr. Gould's reading and then the two readings that you've offered us, same episode and same gun. Yes, Justice Ginsburg. We think our first argument is the most natural and the clearest, but I take your point, and the only response I would make is if shifting interpretations or different interpretations suggest that at the end of the day the language is ambiguous, and grievously so, under the rule of lenity, we ought to prevail. So I'm perfectly comfortable with that conclusion. If there are no further questions, I'd like to reserve the remainder of my time for rebuttal. Roberts Thank you, counsel. Mr. McLeese. McLeese, Mr. Chief Justice, and may it please the Court. A district court judge including Sotomayor, counsel, could I just ask one simple question, the one I started with earlier, which was, which of the two statements are you advocating, that the EXCEPT clause refers to a provision that imposes a greater minimum sentence for violating 924C explicitly, or are you saying the EXCEPT clause, and I'm quoting from your brief, in two different places, the EXCEPT clause refers to a higher minimum sentence for possessing using a firearm in relationship to a crime of violence or a drug offense? McLeese, I don't think there needs to be an explicit reference. I think that the EXCEPT clause is triggered by an offense which has a greater mandatory minimum and which has the same elements as and is the same offense as section 924C1A. Sotomayor Your adversary just said, Mr. Abbott's attorney just said, that you don't believe that section 924C1A is trumped by 924C1B? Or by 18 U.S.C. section 930C? Is his allegation correct or is he wrong? McLeese, he's incorrect. First, with respect to the internal structure of 924C, 924C, as it was amended in 1998, is a somewhat complex statute. It has a mix of sentencing enhancements and elements which create aggravated versions of the offense, but it is all a single offense for double jeopardy purposes, for purposes of what punishment to impose. And therefore, the EXCEPT clause operates consistent with the definition I just suggested quite sensibly and tells a district court judge imposing sentence if a defendant has brandished a firearm and also discharged it, you pick one of the 924C menu items, they are all a single offense, and you impose a single mandatory minimum sentence that is the greatest of those which are applicable. Now, with respect to 930C. Sotomayor, I'm sorry. So that if he discharges a firearm and it says it's a sentence not less than 10 years and he also – and that firearm is also a short-barreled rifle with a 10-year minimum, does he get 10 years or does he get 20 years? He gets 20 years. How? Because there are – the EXCEPT clause says, look to your defendant, look to see which – whether there is any provision of law which carries with it a greater mandatory minimum which punishes the section 924C offense. In that instance, there are two. One of them provides for a 7-year mandatory minimum. One of them provides a 20-year mandatory minimum. The EXCEPT clause says that. Sotomayor, so if it was a machine gun where there's a 30-year minimum, does he get 40 or 30? He gets 30. You always get – the EXCEPT clause operates internally to section 924C to tell the district court judge, very helpfully, in light of the complexity of the provision. You impose one mandatory minimum sentence for each 924C violation, whether aggravated or less aggravated. Roberts, but that's not – I can't imagine a single district judge getting that wrong, to think that, oh, my gosh, here it says 10 years if you discharge the firearms and here it says 5 years if you have one. Which one do I use in a case when it's discharged? You don't need as provision the – the – if – Your argument can't be that this language is to make sure the district judge knows in that case to use the 10-year rather than the 5-year. That point, Mr. Chief Justice, applies in support of our position, because everyone agrees that the primary function, the first half of the EXCEPT clause, does exactly that. That's all it does. It does nothing else. To the extent the EXCEPT clause says, except to the extent a greater minimum sentence is provided by this subsection, the only function it – But that would include B. B is part of the same subsection, isn't it? Yes. So, you know, I think what the Chief Justice says is very obvious when you're just talking about C1A. But it isn't obvious to me that if the firearm is discharged and in addition it's a machine gun, for destructive advice, that you'd only get the 30 rather than the 30 plus 10. Quite so. And the primary – That isn't obvious to me. And the EXCEPT clause would handle that. Correct. And it's important to realize when – Well, I would have – I guess things are obvious to different people. I would have thought it would be odd to say when there are increased minimums that the highest minimum applicable isn't the one that applies. I agree with that. But it's important to realize that another issue that a district court judge might confront is whether you should accumulate them. So it should be, as Justice Sotomayor's question suggested, if there are several available, that you get 20 because it's a machine gun and 10 because it was discharged. And from the perspective of busy district court judges, a provision which says in figuring out how to sentence a 924c offender, you don't have to look through this complex statute, figure out what your sentencing enhancements, do some double jeopardy analysis. All you need to do is simple math. You are directed to look to, of all the ones that are available, the one that is longest of the mandatory minimums. And the point I was trying to make, though, Mr. Chief Justice, is all of this, the idea that it really isn't that critical even to clarify in the first half of the Except Clause what to do, is consistent with our position, which is the Except Clause altogether, both internally to section 924c and as it reaches externally, is about clarifying something that may be true district court judges otherwise would have been able to figure out had they done a lot of analysis, but it makes it much simpler, and the practical utility of it is to clarify a sentence, a sentencing judge's options with respect to a statute that had been made much more complex. Roberts, but your main, the meat of your argument focuses on 3559c, right? There is this significant provision out there that does provide a greater mandatory minimum. And I just don't see as a practical matter why people would worry about that. Under 3559c, you get life. And you are saying, well, they put in the Except Clause to be sure that the judge would add another 5 years at the end of a life sentence. Just, Mr. Chief Justice, I think the effect of the Except Clause is the opposite, which is it makes sure that a judge imposes only life and does not add additional sentences. I agree from the perspective of a defendant that may not be most consequential. But this is a provision which, taken as a whole, was clarifying not just externally to 924c, but also internally what district court judges should do with a complex menu. Roberts, just so I make sure I understand, the basic point you are making is that there are some things under your reading that this deals with. One is the internal point, and we can disagree as to whether that's necessary or not. And the other is 3559c, where it seems to me it doesn't make any difference whether you are in there for life or life and the additional 5 years. I agree it's not practically significant to a defendant, although sentences of life plus additional terms or consecutive life are not at all uncommon in the Code. But it is of significance to district court judges who are trying to figure out what sentence to impose. And this provision What do you do with 930c? Don't leave without answering my question. Yes. I do not interpret 930c as subject to the Except Clause. I believe it is a separate offense with different elements, and under the double jeopardy analysis that would apply, it is possible to Your answer to me was you read the Except Clause as applying to any higher minimum sentence for possessing, using, or carrying a firearm in relationship to a drug offense or a crime of violence. Isn't killing a person a crime of violence? Yes, although 930c does not And isn't the bringing of a firearm into a Federal facility the carrying a firearm? Yes. Although 930c does not require the killing of a person, it extends to attempts Where is 930c? Can you tell me where it is? I don't believe it is referred to only in Petitioner Abbott's brief at a page number. I don't recall. It's not one of the provisions that is in it. No, but I'm still trying to understand your position, which is I read what you said to me the Except Clause means, and I'm applying it to 930c, and I couldn't figure out why you didn't list it. Because 930c does not require an actual killing of a person. It extends to conspiracy and attempt. And therefore, one can violate 930c without violating 924c and vice versa, and therefore, by conspiring or by attempting to do so. So 930c has a broader reach because of these vicarious and inchoate forms of liability. So a defendant could be convicted separately of 930c and of 924c. They are not the same offense for double jeopardy. Breyer. There are two possible readings now of the Except Clause, where it says the words are, this subsection doesn't apply, where a mandatory is, where any other provision of law sets forth a higher mandatory. Now, one possible reading, which is yours, is what this means is that, Judge, where you are operating under that provision you just mentioned, and you're going to the guy's committed two serious 924c things, and so he's entitled to life, this is just what the Chief Justice said, this is done to remind the judge, don't give him life plus 25 years, because it would be 25 years under this statute, not 5. That's one possible reading. The other possible reading is, Judge, where in fact you have a pretty – you have the underlying drug offense, that's going to get you up into the 30s, and it's, you know, in the Guidelines it's going to be probably 10, 5 years or whatever it is. You have a pretty high drug offense already, and now we give him 5 extra years, say, for having a gun under this, unless he's already gotten, say, a mandatory minimum of 7 years. And if he's already gotten a mandatory minimum of 7 years, here's what's happened. Judge, turn to the Guidelines, and the Guidelines will tell you to add 3 or 4 extra years. So in one – those are the two possible readings. Now, the first reading to me makes very little sense. The second reading to me says, yes, this is serving a purpose. It's once you're sure this guy has to go to jail for 5, 6, 7, maybe 10 or 20 years for sure, extra amounts are controlled by the Guidelines, which is administered by a judge. Now, if you just came across that for the first time, which would you think was most probable? Well, I think when you place this in the context of the 1998 amendments that enacted the EXCEPT clause, it is quite clear that the former is more plausible. And the reason I say that, there are really five features of the 1998 amendments that illustrate that the EXCEPT clause is not to be read as eliminating any sentence for a section 924c offense, but rather is clarifying which sentence to impose. The first is that the 1998 amendment, setting aside the EXCEPT clause for a moment, in every respect substantially increased the scope and severity of section 924c. It changed what had been mandatory sentences to mandatory all the way to life. It responded to this Court's decision in Bailey by increasing the substantive scope of the provision. It increased the man – it created increased mandatory minimums for 7-year and 10-year offenses. So it would be odd to think that in the second half of a presumptively narrow EXCEPT clause, Congress at the same time ran in the direct opposite direction and had a substantial rollback of preexisting section 924c sentencing provisions. And that's to be clear. At the time of the 1998 amendments, these Petitioners would have been subject to the mandatory minimum sentences that they received. They would have been subject to 10 years in one of the cases for the drug offense and five additional years, mandatory and consecutive, under 924c. For the other, they would have been – he would have been subject to 15 years for being a felon in possession and an armed career criminal and five additional under 924c. So one of the features that is key is putting this in the context of the 1998 amendments, which were in every respect. Scalia But it does subject them to less, at least with respect to those enhancements set forth within the subsection itself. That is true, but that is not a rollback of preexisting provisions. It's a way of – because none of – in prior 924c law, there wasn't a body of law that would have given anybody who would get the benefit of the EXCEPT clause under 924c a higher sentence. What all that the EXCEPT clause does is it makes clear under this more complicated scheme that when we are increasing these provisions to 7 or 10, you shouldn't telescope them all inside 924c. You shouldn't add them all together. You pick the highest. And so the EXCEPT clause is not a rollback. It is a way of accommodating and giving clear direction to the complexity of the newly enacted provision. Breyer When did Congress pass the statute that they amended in 1998? The one with – you are saying – I mean, it's a good point. You have a point that this would make it more lenient, the interpretation. But the IT was passed when? Well, section 924c in its original form, I think, was passed in the 1960s. So that's way before the guidelines. So what they are trying to do now is the – in 1998 is they are trying to – see, in 1998 what they are trying to do is take some of these old provisions and reconcile them with this new system that's come along. So I agree you have a point there, but it does make a certain amount of sense, because what it's saying is, in these cases, where you have a WAPO, mandatory minimum anyway, so you are sure you have got them. Now, the additional amount will be controlled by the guidelines, which are subject to not much discretion. They are pretty close to mandatory minimums, but there is a little wiggle room. On the general approach of Congress under 924c, it also bears note that in the last 25 years, Congress has amended 924 – section 924c six times, and setting aside for a moment the step clause, in all of those amendments, Congress has uniformly expanded its scope or increased the severity of sentences. So the except clause would be the sole provision in which Congress rolled back section 924c. And there are several other features of the 1998 amendment that make clear that that is not what Congress did. Ginsburg. How do you answer Mr. Ryan's argument that, well, you can read it this way, you can read it that way, therefore, he wins under the rule of lenity? Well, this Court's cases make clear that the rule of lenity comes into play at the end of the analysis only if there is grievous ambiguity after all the considerations of statutory construction have been considered. We haven't yet discussed all of them, and I think when all of them are discussed, there is no grievous ambiguity. In fact, the reading that we suggest is the only reasonable reading all factors consider. And if I can turn back to a couple other features of the 1998 amendments, another feature is the title of the act itself, which is an act to throttle the criminal use of guns. And again, it's just inconsistent with the provision that has these features and has that act that it would be a substantial, important decrease in mandatory minimum sentences applicable to a large class of people. Roberts, you're saying because Congress wanted to get tough on the people who use firearms in this provision, every ambiguous clause should be read in a way that makes it tougher on the criminal defendant. I don't think that would push the argument too far. I think it is highly relevant to construing the statute as a whole, that that was the clear overall function of that amendment. Now, there are two other features of the 1998 amendment, which are it did, as has previously been noted, also the only other thing that Congress did in the 1998 amendment, other than modifying section 924C, is it made a corresponding change in section 3559C to correspond. So we know that section 3559C was front and center in Congress's mind as it was enacted in the 1998 amendments. And it is very natural when Congress is creating a more complex statute and giving district court judges guidance about which mandatory minimums to select under that statute to mention and have language that accommodates the fact that there is another provision that's in the same form. Roberts, with respect to 3559C, they were in fact being more lenient, not stricter, right? No, I think they were clarifying. I thought you said earlier the purpose of this, what it does, is it makes sure that you don't add 5 extra years on the people who are sentenced to life. I think it clarifies the relationship. And in fact, arguably, it could have clarified the situation in a way that would have been beneficial to defendants. And the reason I say that is when Congress enacted the first half of the accept clause, which said pick one and only one mandatory minimum and impose it, talking internally to section 924C, if it hadn't mentioned 3559C, there could have been the idea that if Congress didn't direct the same approach with respect to 3559C, there's an implication that in fact you should impose both. And so what it really was doing was clarifying what would have been unclear. And it is, again, only half of a presumptively narrow provision which is just clarifying the relationship. Roberts, you're saying when you get life or you get 5, just serve life, don't serve the extra 5. Yes. But it's not saying that to defendants. It's saying that to busy district court judges who just need to know in a simple, clear way, what am I supposed to do, what sentence am I supposed to do. And that's the only thing that that additional language, which says otherwise provided by this subsection, or by any other provision of law. Why didn't they just mention 3559C? Well, there is a thing. The only thing it covers, that tiny little thing which has no effect at all except for the benefit of the busy district judges, you say. I find that quite implausible. Well, remember that it was, although it is not hugely consequential to defendants, it was a provision that Congress was directly considering then. But there is another function, which is it creates a default rule for future similar provisions like 3559C. And so there are, and again, so it's not limited to its function with respect to 3559C. It also serves, as Congress often provides, a default rule. And so, again, there is a fifth feature of the 1998 amendments for those of whom this is concerned, which is that the legislative history of the provision strongly corroborates our interpretation. Breyer. Breyer. What is an example? You're saying the other, this thing also serves the purpose that perhaps someday Congress will pass a new statute, a totally different one, and a busy district judge might think that he should add the 5 or 25 years from this provision onto whatever sentence this hypothetical new statute provides, but this will tell him not to do so. Did you have anything in mind? There are other provisions that, like 924J, which do provide sentences for 924C offenses that are codified elsewhere in the Code. And with respect to other offenses, that's also quite common. So there's nothing implausible about the idea that the statute is not going to be changed. Breyer. I take it in those other offenses, there are other things in the Code. And the odd thing about this one is there is no other thing in the Code except the one we've been discussing. And so I just wondered if there, was there at the time anybody thinking of adding some new thing that this might have been applicable to, or have you come across anything? I take it your answer is no. I'm not aware that they had, Congress had some particular pending legislation in mind. My point more generally, though, is that it is quite common for Congress to provide penalties for Offense A in a different section. And so creating a default rule is a perfectly reasonable thing for Congress to have done while it was clarifying the internal relationships among the various 924C provisions and the provision in 3559C, which is front and center in front of it. With respect to the legislative history, the except clause language was proposed by Senator Jesse Helms. In the legislative history of the provision, there is nowhere any comment by anyone suggesting that anyone understood it as rolling back preexisting section 924C penalties or as reflecting a new policy different from the fundamental policy of section 924C, which has always been defendants who commit drug trafficking offenses or violent crimes and who involve a weapon will get an additional. Roberts. Roberts. Is there any evidence in the legislative history that the reason they put this in was to ensure that people who got life would not get life plus 5 years? There's no explicit reference to that, but that is, I think, a good inference from the fact that all of the other explanations are far more implausible. And there is something – there are two things which support that inference more specifically. One of which is, again, that Congress did have in front of it section 3559C and was amending it. The second is that the sole reference anywhere in the legislative history to the except clause is in the testimony of a witness at a hearing, and what that witness said about it was that it will prevent confusion with other provisions. And so there is, I think, a strong indication that that's true. Scalia, one witness at a hearing? At a hearing? And you really think that the rest of the Congress knew about that hearing? I don't. My point is really more the negative, which is, if the except clause in the second half of an exception that is, in its first part, intended to clarify, was instead a major policy shift from the preexisting policy of section 924C, additional mandatory consecutive sentences, and instead a shift over to sentences which we will try to adjust or ameliorate in light of other. Breyer, No, no, no. It's a shift over to the sentencing guidelines which say a person like this one will receive an extra 3 or 4 or 5 years, depending on circumstances. Will receive it, just like a mandatory, unless, of course, it is an unusual case. That's what it's a shift to. Am I wrong? Two responses, Justice Breyer. One of which is that Congress has amended 924C both before and after this provision, and it's clear that Congress is not shifting away from a mandatory minimum regime to a regime that where the guidelines are relied upon to provide the minimum sentence that Congress requires. And it is a shift not just to a guidelines regime, because if this is a major policy shift into a different world, there — it poses a question of statutory construction as well, not just about guidelines. And that's the next topic, which is — Well, wait. I mean, the guidelines can't be, as Justice Breyer said, just like a mandatory. They can't be, can they? They could not have been even in the pre-Booker world, certainly in the post-Booker world they cannot. But the point is that Congress — if Congress was shifting in the EXCEPT clause, there's a question of what's the nature of that policy shift. If you were going to try to reduce 924C sentences to accommodate sentences on other provisions of law, instead of just making them an add-on always, then there's a question, what policy should you pick? Should you pick any other sentence the defendant is facing at this sentencing? Should you pick any other sentence arising out of this transaction? That's not a guidelines issue. That's a question of what is the policy reflected by the statute. And— Roberts, you should pick any other violent crime or drug trafficking offense that already provides a higher minimum. That— No. It seems to me the perfectly natural reading to say, look, we're providing some minimum sentences. When this happens, when this is the violent crime and you use a gun, but if you've already got a higher sentence for the violent crime, then this doesn't apply. That is a possible policy to be sure, but one thing — it's certainly not the only reasonable policy. You could focus on the transaction or you could focus on what the defendant is facing at the sentencing. All those are among the policy options you would consider. And what's interesting is that Petitioners can't agree among those policy options, and they can't agree among those policy options because section 924C has no guidance about it, and the reason section 924C has no guidance about it is because Congress wasn't making that policy choice at all. Congress was simply clarifying how to implement the preexisting policy under section 924C, which is always impose for a section 924C violator an additional separate mandatory minimum sentence. But here is advice about how to do that. Here is advice about how to do that internal to section 924C. Here is advice about how to do that external to 924C under 3559C and with a default rule for other similar provisions. That's the modest objective that Congress was attempting to achieve, and as everyone agrees. Scalia Excuse me, for other provisions, are you anywhere in the code? I mean, regardless of whether those provisions are being prosecuted in this particular indictment? I mean, you're saying that the other side has to say, well, it's only those that are in this particular criminal transaction or only those in the particular indictment. Do you escape that necessity? I think we do, and the reason we do is because, in our view, this provision operates only when you're talking about prosecution for the same offense in double jeopardy purposes. And so it's not possible for, under our submission, for the government to prosecute somebody for one of these variants of section 924C and then come back again later and prosecute again and manipulate the overall structure of sentences, because they are the same offense.  And so there are certain circumstances where the courts do open up for irrational patterns of outcome based on the order in which things are prosecuted and, in addition, irrational patterns of the mandatory minimums based on. Sotomayor So how is your reading different than Mr. Abbott's? Mr. Abbott has two readings and our reading differs from each of them. The first of Mr. Abbott's readings is transactional in nature. Ours is focused on the section 924C offense itself. The second of our readings is the second of Mr. Abbott's readings is focused on a firearm, just the fact that a firearm is involved. And again, ours is focused on the use of a firearm in a way that constitutes the section 924C offense. So those are the differences. But if I could just point out, the other anomalies, there are two other anomalies that we have not yet touched upon. One of them is that Petitioner's submissions create anomalous patterns of floors of statutory minimums. As we've discussed in the briefs, if a defendant under Petitioner's submission, principal submission, has committed a drug offense that carries a 5-year mandatory minimum sentence and brandishes a firearm, it is carrying a 7-year mandatory minimum. The floor is 12 years. If that defendant's drug offense is more aggravated and carries a greater sentence so that there's a 10-year mandatory minimum, the overall mandatory minimum under Petitioner's submission reduces to 10. And there is the further anomaly that for offenses that are different, Petitioner's submission is that the defendant will end up, although adjudicated guilty of section 924C offense, with no sentence whatsoever. There will be a free-floating adjudication of guilt, and because the defendant, let's say, is a felon in possession and is sentenced under the Armed Career Criminal Act, when the judge goes to sentencing, the judge on Petitioner's view says, I will give you 15 years under the Armed Career Criminal Act, that triggers the accept clause, and therefore, I impose no sentence whatsoever under section 924C. That also is not true. Roberts, as Justice Breyer has pointed out, he can take that into account in figuring out what sentence he would want to oppose beyond the greater minimum. That is true. My point about the anomaly is just that it is very strange, as to my knowledge unheard of, to have a judge go to sentencing and have a series of adjudications and to tell the judge as to one of them that's not the greater or lesser inclusive offense of another, you don't even need to impose a sentence on that adjudication. The backdrop basic assumption is on each of the adjudications, you oppose a sentence. Now, that's not true if offenses are greater and lesser and are the same offense for double jeopardy purposes. But under Petitioner's submission, that is true with respect to offenses, like being a felon in possession of a firearm and being someone who violated 924C, that are different offenses in double jeopardy law and have always been given separate judgments, separate punishments. If the Court has no further questions, we would request that the judgments below be affirmed. Roberts. Thank you, Mr. McLeese. Mr. Ryan, you have three minutes remaining. I'd like to make two points on rebuttal. There's been a great deal of discussion about the general purpose of 924C, but as this Court has indicated, the best indication of a statute's purpose is the statute's language. And although the government argues that the sole purpose of 924C was to enhance punishment for defendants, the Except Clause belies that simplistic assertion of the purpose. The Except Clause actually mediates the punishment that is provided in 924C. The government's reading at the end of the day wants to rely on purpose in order to give no effect to the Except Clause. The idea that 3559C is an instruction to busy district court judges, even putting aside the impossibility of serving an additional sentence after completing a life sentence, doesn't hold up because the government never disputes the fact that 3559C begins with the statement, notwithstanding any other provision of law. So the busy district court judge never needs to turn to the Except Clause in 924C1A to know that you impose a life sentence when the third strike is a 924C. Alito, whenever Congress uses a phrase like that, notwithstanding any other provision of law, does that mean that Congress must think that there is some provision of law that falls within that? Possibly, yes. And here, the other provision of law would be 924C, and so the point would be to make sure that something covers any existing statute that there might be that would fall within that without necessarily saying, well, there are two of them, there are two, maybe there are three, going through the entire code to find out how many there might be, or if there is any? Yes, Justice Alito, and that's consistent with my point, is that. But it's not consistent with your main argument about the Except Clause, is it? Well, yes, it is, because the Except Clause would also apply to any other provision of law. No, but your argument is the Except Clause has to have some pretty substantial effect or otherwise any other provision of law part of it, otherwise they wouldn't have put it in. Oh, I apologize. I misunderstood your question. The notwithstanding any other provision of law in the context of 924C would not have any effect if the Except Clause was considered first. But 3559C applies to many other triggering offenses. And so with regards to those, and the government has not suggested that 3559C has no effect. The last point I would like to make is that there is no doubt that regardless of one's view about mandatory minimum sentences as a matter of policy, no one doubts that Congress has the authority, if it chooses to exercise it, to stack one mandatory minimum sentence on top of another. But as this Court's cases make clear, Congress, under the rule of lenity, needs to make that choice clear. And if nothing else, the government's shifting views indicate that Congress has not exercised that choice clearly in this case. Thank you. The case is submitted. The Honorable Court is now adjourned until tomorrow at 10 o'clock.